## GEORGE KILLINGER v. STATE.

No. A-4101.   Opinion Filed Sept. 17, 1923.
(218 Pac. 182.)
(Syllabus.)

**Homicide—Evidence Sustaining Conviction of Murder.** In a prosecution for murder committed in perpetrating a robbery, evidence considered and held sufficient to sustain a conviction of murder.

Appeal from District Court, Tulsa County; Redmond S. Cole, Judge.

George Killinger was convicted of murder and he appeals. Affirmed.

W. B. Richards, for plaintiff in error.

George F. Short, Atty. Gen., for the State.

DOYLE, J.   Plaintiff in error, George Killinger, and Bob Crawford, were indicated in the district court of Tulsa county for the crime of murder in killing one W. S. Ward, in said county, on the 10th, day of October, 1915. Upon his separate trial plaintiff in error, Killinger, was found guilty of murder and in accordance with the verdict of the jury was adjudged to be imprisoned in the state penitentiary at hard labor during the term of his natural life. He has appealed from said judgment to this court, but there has been no appearance in his behalf on his appeal, and the case is submitted on the record.

The grounds of the motion for new trial and the assignments of error relate to rulings of the court in the admission of evidence, instructions given to the jury, and the sufficiency of the evidence taken as a whole to sustain the verdict.

The facts which are undisputed, or which the evidence tends to prove, are as follows:

In the town of Dawson, four or five miles northeast of the city of Tulsa, between the hours of 8 and 9 o'clock p. m., Sun-

day evening, Oct. 10, 1915, W. R. Ward left his store and started towards his home, distant a block or two. On his way the defendant stepped out from behind a building and ordered him to stick his hands up. A struggle ensued, and the defendants fired several shots. In the meantime they all circled around into the middle of the street, two more shots were fired, and Ward fell. The defendants searched his pockets, taking his watch and what money he had. As they started away, W. S. Brown, another storekeeper in Dawson, met them; the defendants ordered him "to stick 'em up," and Brown commenced shooting. At his third shot the defendant Crawford fell; defendant Killinger raised him up, and they disappeared down an alley. There were several eyewitnesses to the shooting; when they reached Ward he was dead. The next morning officers went to the home of Bob Crawford; they found blood on the steps and learned that he was in the Tulsa Hospital with a gunshot through his lungs; they then went to the home of Killinger and from there to his barber shop on First street in Tulsa, and he was not there. About five years later he was found in Stony Bluff penitentiary, in the Dominion of Canada.

An officer testified that between 2 and 3 o'clock that Sunday afternoon the defendants, armed with guns, created a disturbance at a dance hall in Tulsa; that when the officers appeared they ran out the back door and were later seen going along the railroad toward Dawson. About 5 o'clock that Sunday evening they were seen by two or three witnesses in the town of Dawson. Between 6 and 7 o'clock they entered a restaurant a few doors from the store of the deceased and had supper. One or two persons who knew the defendant Crawford talked to him. Then the defendants went across the street and sat down on a porch. About an hour later they left and

went around towards the building and where the holdup occurred.

Lester Chism, testified:

"I had known Bob Crawford nearly all my life. I talked to him, and this defendant was sitting by his side. I saw them walk over and go behind that building; shortly after I heard scuffling; they were striking at Ward, and he was knocking the licks off; one of them shot. After Ward got out in the street, they fired two or three more shots."

Three or four witnesses positively identified the defendant Killinger as the man who was with the defendant Crawford in the restaurant.

Mrs. Mills testified that Ward fell when the last shot was fired in the street, and the defendants stooped over him and began going through his pockets; that she heard them say to Mr. Brown when he came up, "stick them up," and Mr. Brown commenced shooting.

W. S. Brown testified:

"I heard the shooting and grabbed my gun and ran down the street. I was held up by two men. The first one said, 'Put them up.' The second says, 'God damn you, put them up.' I fired and missed. I fired again and missed. I knew I had only three shots, and I ran up within four feet of the nearest one and shot him. The other one opened fire on me; and I ran a half a block to my father's and got his shotgun. As I came back, I ran across Ward's body and stopped."

There was no testimony offered on the part of the defendant.

We have given careful examination to the record in this case and find no error justifying a reversal. Some exceptions were taken during the course of the trial to the admission of evidence bearing upon the issues in the case, but we are of the

opinion that none of them were well taken. We have examined the instructions given and the one refused, and discover no error. The instruction requested was to the following effect:

"The mere presence of a party at the scene of the homicide does not make him a criminal; he may have known that a crime was committed; if he did not participate in it directly or indirectly or encourage the party doing the killing, his mere presence would not constitute him a principal in the transaction, nor connect him criminally with the killing."

This feature of the case was properly covered in the instructions given by the court.

The testimony on the part of the state was, without a doubt, sufficient to sustain the verdict.

Upon the whole case it appears to us that the defendant had a fair trial, and that the ends of justice under the law were no more than satisfied by the verdict and judgment of. conviction.

The judgment of the lower court is accordingly affirmed.

MATSON, P. J., and BESSEY, J., concur.